SEALED

# United States District Court

## SOUTHERN DISTRICT OF INDIANA

**UNITED STATES OF AMERICA**

**V.**

**DANIJEL GLUMAC**

## CRIMINAL COMPLAINT

CASE NUMBER: 1:17-mj-00314

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. Between January, 2015 and March 29, 2017, in Marion County, in the Southern District of Indiana defendant did,

Conspire to commit mail fraud, commit mail fraud, conspire to commit money laundering and commit money laundering.

in violation of Title 18, United States Code, Sections 1349, 1341, 1956(h) and 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i). I further state that I am an Inspector, and that this complaint is based on the following facts:

See attached Affidavit.

**Continued on the attached sheet and made a part hereof.**

Laura A. Carter

**Sworn to before me, and subscribed in my presence**

May 1, 2017 at Indianapolis, Indiana
**Date**

Mark J. Dinsmore, U.S. Magistrate Judge
**Name and Title of Judicial Officer**

**Signature of Judicial Officer**

# AFFIDAVIT IN SUPPORT OF APPLICATION

I, Laura A. Carter, after being first duly sworn, depose and say the following:

## INTRODUCTION

1. **Introduction.** I make this Affidavit in support of Applications for a Criminal Complaint and Arrest Warrant for **DANIJEL GLUMAC** for violations of 18 U.S.C. § 1349 (conspiracy to commit mail fraud), 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1956(h) (conspiracy to commit money laundering), and 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i) (money laundering).

2. **Your Affiant.** I am a Postal Inspector with the United States Postal Inspection Service, and have been so employed since July of 1995. I have a Bachelor's degree in Criminal Justice. I have received extensive training in financial investigative techniques. I have personally conducted and/or participated in numerous investigations of persons and business organizations that have violated Federal statutes, particularly those statutes found in Title 18 of the United States Code. I have completed the required training at the U.S. Postal Inspection Service Law Enforcement Academy. My training included lessons in financial investigative techniques, criminal investigation techniques, criminal law, and search warrants. I have participated in numerous search and seizure warrants.

3. **Sources of Information.** The information contained in this affidavit is based on my personal knowledge, data that law enforcement has received from Amazon.com, Inc., information that I have received from other law enforcement agents assisting in this investigation, and what I have learned from the other sources specifically discussed herein. This affidavit does not purport to set forth all of my knowledge or investigation into this case but only that which I believe is sufficient to establish probable cause as to the criminal violations described herein.

4. **Summary of Probable Cause.**

a. DANIJEL GLUMAC, together with ERIN J. FINAN and LEAH J. FINAN, husband and wife, have participated in a scheme to defraud Amazon.com, Inc., an online retailer and e-commerce company, to steal consumer electronics items and sell them at a profit. In sum, the FINANs ordered items on Amazon and then fraudulently requested, and received, replacement items by falsely claiming that the original items ordered were damaged, did not work, or had some other problem. Often, they made claims for replacements *before* the purportedly damaged or missing items were even delivered to them. The FINANs evaded detection by Amazon for years through a variety of tactics to conceal their identities and ordering/replacement history. Since January 2014, the scheme has involved over 700 separate Amazon accounts and over 2,900 orders for consumer electronics items, with over 2,100 being fraudulent replacement orders. The total value of these fraudulent replacement items stolen through this scheme was approximately $1.2 million.

b. The FINANs sold the majority of the stolen items to GLUMAC, who in turn re-sold them to an entity in New York at a profit to himself. GLUMAC was aware of the scheme to defraud Amazon and provided advice to the FINANs on how to evade detection. Since January 2015, GLUMAC has paid the FINANs a total of at least $500,000 for the stolen items, most of which he paid to them in wire transfers and checks to shell companies that he advised the FINANs to create. During the same period, GLUMAC received a total of at least $900,000 from the New York entity. Bank records show that GLUMAC often used the money from the New York entity to pay the FINANs, with a deposit from the New

York entity entering GLUMAC's account within days of a payment to the FINANs, and often on the same day.

## THE CHARGES

5. **DANIJEL GLUMAC** is a male, date of birth 09/28/1988, Social Security Number 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, who currently resides at 554 Ironstone Court, Indianapolis, IN 46239. Based on my training and experience, and on the facts described herein, there is probable cause to believe that DANIJEL GLUMAC committed the following federal offenses:

### Count 1
### Conspiracy to Commit Mail Fraud
### 18 U.S.C. § 1349

6. Beginning in or before January 2015 and continuing through on or around March 29, 2017, within the Southern District of Indiana and elsewhere, DANIJEL GLUMAC, did knowingly and willfully combine, conspire, confederate and agree with ERIN FINAN, LEAH FINAN, and others to violate 18 U.S.C. § 1341 (mail fraud), that is, to knowingly and with intent to defraud devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of false or fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and for the purpose of executing the scheme, and for attempting so to do, knowingly cause to be delivered any matter or thing by mail or commercial interstate carrier, according to the directions thereon.

### Count 2
### Mail Fraud
### 18 U.S.C. § 1341

7. On or around July 21, 2015, within the Southern District of Indiana and elsewhere, DANIJEL GLUMAC, did knowingly and with intent to defraud devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of false or fraudulent

pretenses, representations, and promises, knowing that they were false and fraudulent when made, and for the purpose of executing the scheme, and for attempting so to do, knowingly cause to be delivered any matter or thing by mail or commercial interstate carrier, according to the directions thereon, that is, DANIJEL GLUMAC directed others to fraudulently obtain and cause to be mailed to his home address several Microsoft Surface tablets which represented the proceeds of a scheme to defraud Amazon, Inc.

**<u>Count 3</u>**
**Conspiracy to Commit Money Laundering**
**18 U.S.C. § 1956(h)**

8. Beginning in or before January 2015 and continuing through on or around March 29, 2017, within the Southern District of Indiana and elsewhere, DANIJEL GLUMAC, did knowingly combine, conspire, confederate and agree with ERIN FINAN, LEAH FINAN, and others to violate 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i) (money laundering), that is, to knowingly conduct financial transactions affecting interstate commerce with the proceeds of a specified unlawful activity, that is, Mail Fraud, in violation of Title 18, United States Code, Section 1341, knowing that the property involved in the transaction were the proceeds of some specified unlawful activity, and with the intent to promote the carrying on of the specified unlawful activity and knowing that the transaction was designed, in whole or in part, to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity.

**<u>Count 4</u>**
**Money Laundering**
**18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i)**

9. On or around July 16, 2015, within the Southern District of Indiana and elsewhere, DANIJEL GLUMAC, did knowingly conduct a financial transaction affecting interstate commerce – that is, he initiated a wire transfer from the Regions Bank account of So Trade in the

amount of $8,960 made payable to the Regions Bank account of Tech Pro Services in exchange for consumer electronic goods which had been stolen from Amazon Inc., and which were the proceeds of a specified unlawful activity, that is, Mail Fraud, in violation of Title 18, United States Code, Section 1341 – knowing that the property involved in the transaction were the proceeds of some specified unlawful activity, and with the intent to promote the carrying on of the specified unlawful activity and knowing that the transaction was designed, in whole or in part, to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity.

## RELEVANT CRIMINAL LAWS

10. To sustain the charge of **Conspiracy to Commit Mail Fraud**, as charged in **Count 1**, the United States must prove the following elements:

FIRST: A conspiracy to commit mail fraud existed, that is, two or more people agreed to commit mail fraud; and

SECOND: The Defendant knowingly became a member of the conspiracy with an intent to advance it.

11. To sustain the charge of **Mail Fraud**, as charged in **Count 2**, the United States must prove the following elements:

FIRST: That the Defendant knowingly devised or participated in a scheme to defraud;

SECOND: That the Defendant did so with the intent to defraud;

THIRD: That the scheme to defraud involved a materially false or fraudulent pretense, representation, or promise; and

FOURTH: That for the purpose of carrying out the scheme or attempting to do so, the defendant used or caused the use of the United States Mails or a private or commercial interstate carrier to take place.

12. To sustain the charge of **Conspiracy to Commit Money Laundering**, as charged in **Count 3**, the United States must prove the following elements:

FIRST: A conspiracy to commit money laundering existed, that is, two or more people agreed to commit money laundering; and

SECOND: The Defendant knowingly became a member of the conspiracy with an intent to advance it.

13. To sustain the charge of **Money Laundering**, as charged in **Count 4**, the United States must prove the following elements:

FIRST: The defendant knowingly conducted or attempted to conduct a financial transaction;

SECOND: Some or all of the property involved in the financial transaction was proceeds of a specified unlawful activity, namely Mail Fraud, in violation of 18 U.S.C. § 1341;

THIRD: The defendant knew that the property involved in the financial transaction represented proceeds of some form of unlawful activity; and

FOURTH: The defendant engaged in the financial transaction with the intent to further activity or promote the continued success of the specified unlawful activity,

-or-

The defendant knew that the financial transaction was designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the specified unlawful activity.

## PROBABLE CAUSE

### *Background*

14. **Amazon.com, Inc.** ("Amazon") is an internet-based retailer based in Seattle, Washington that offers numerous products for sale and delivery via its website and supply chain. Customers can order products on Amazon's website and expect delivery within a short period of

time. In general, Amazon fulfills customer orders by retrieving the ordered item from an Amazon warehouse facility; shipping the item to the customer's general vicinity using a common carrier, such as UPS, FedEx, or the U.S. Postal Service; and delivering the item via another third-party carrier to the customer's address or pick-up location.

***The Scheme to Defraud***

15. Data obtained from Amazon showed that beginning in or before 2014, and continuing until in or around early 2017, ERIN FINAN and LEAH FINAN, husband and wife, and residents of the Southern District of Indiana, devised and executed a scheme to defraud Amazon by falsely claiming to Amazon that items they ordered were damaged, not working, missing parts, or the like, and requesting and receiving replacement items at no charge. The FINANs also falsely claimed to Amazon that the replacement items were similarly damaged or not working, and requested and received additional replacement items at no charge. The FINANs repeated this process numerous times. As the FINANs well knew, however, the items they ordered, and the replacement items, were delivered in good working condition.

16. For example, on or around September 12, 2016, the FINANs placed an order on Amazon for a Samsung Gear Fit2 smartwatch, which had a retail price of approximately $179.99. The FINANs intentionally provided false identifying and address information to Amazon to conceal their identity.

a. On or around September 13, 2016, before the original order had been delivered, the FINANs fraudulently requested a replacement Samsung Gear Fit2 smartwatch, falsely claiming the item from the original order was damaged.

b. Later that same day, before either the original order or the replacement order had been delivered, the FINANs fraudulently requested a second replacement Samsung Gear Fit2 smartwatch, falsely claiming the first replacement was damaged.

c. In response to the FINANs' original and replacement orders, Amazon shipped parcels containing the items in interstate commerce via UPS from Amazon Fulfillment Services located at 172 Trade Street, Lexington, Kentucky 40511, to a UPS Store located at 9702 East Washington Street, Suite 400, Indianapolis, Indiana 46229.

d. On or around September 16, 2016, the FINANs picked up these and other items from the UPS Store located at 9702 East Washington Street. All of the items were in good working order. Indeed, three days before the FINANs picked up the items, law enforcement executed a search warrant on the parcel containing the first replacement item and confirmed it was in good working order.

17. As another example, DANIJEL GLUMAC initiated a wire transfer payable from the Regions Bank account of So Trade to the Regions Bank account of Tech Pro Services in the amount of $8,960 on July 16, 2015. The FINANs then fraudulently obtained several Microsoft Surface Tablets from Amazon Inc. and at GLUMAC's direction had them mailed directly to GLUMAC's home address at the time of 2875 Beethoven Avenue, Indianapolis, IN, care of So Trade. One such order was mailed to GLUMAC's home on or about July 21, 2015.

18. Evidence obtained from searches of the FINANs' prior residences and vehicles, including electronic devices containing records of Amazon orders and empty boxes shipped from Amazon Fulfillment Centers, confirmed that the FINANs were perpetrating the above-described fraud on Amazon. Physical surveillance of the FINANs' daily activities and tracking of multiple

vehicles that the FINANs used to retrieve the stolen items from retail shipping stores also confirmed the FINANs' role in the above-described scheme.

19. The FINANs focused the scheme on obtaining consumer electronics that cost several hundred dollars each, as requested by Individual A, such as Microsoft Xbox One game consoles, Microsoft Surface tablets, Samsung Galaxy Note 10 tablets, Samsung Gear Fit2 smartwatches, and GoPro HERO5 cameras, all of which could be sold at a relatively high price.

20. Based on patterns developed from the evidence, and Amazon data, investigators concluded that between approximately January 1, 2014 and February 2, 2017, the FINANs fraudulently requested and received over 2,100 replacement items at no charge, with a total value of at least $1,218,504.

21. **The Arrest of the FINANs.** On February 2, 2017, law enforcement agents arrested the FINANs for whom arrest warrants had been issued on a Criminal Complaint under cause number 1:17-mj-00030.

22. **The FINANs' Statements.** After their arrest, each of the FINANs gave statements to law enforcement (after being read their rights).

a. During her statement, LEAH FINAN confessed to perpetrating the above-described scheme. She admitted that she and ERIN FINAN defrauded Amazon by falsely claiming items they ordered were damaged, broken, or the like in an effort to obtain replacement items at no charge. She explained how, to further the fraudulent scheme, she and ERIN FINAN used multiple techniques to evade detection and conceal their identities from Amazon, including by repeatedly providing false identifying information to Amazon in connection with items they ordered or replacements they requested.

b. ERIN FINAN gave two statements. During his first statement, ERIN FINAN admitted ownership of "Tech Pro Services" and "Trade Plus," both of which, as described below, were known to agents to have received funds from the FINANs' sales of the stolen items. However, ERIN J. FINAN did not admit to obtaining and selling stolen items. During his second statement, ERIN FINAN admitted to obtaining numerous consumer electronics items from Amazon and selling them in exchange for money. He also admitted to using the money they received to obtain more items from Amazon, which they could also sell. He did not, however, admit to falsely claiming that the items were damaged, broken, or the like in an effort to obtain replacement items at no charge.

***Evidence Linking DANIJEL GLUMAC to the Fraudulent Scheme***

23. **The FINANs Sold the Stolen Items to GLUMAC.** Both LEAH FINAN and ERIN FINAN stated to agents immediately following their arrest, and after, that they sold the majority of the items they fraudulently obtained from Amazon to GLUMAC. They stated that they met GLUMAC several years ago through Craigslist, an online marketplace, in connection with their effort to sell a consumer electronics item they fraudulently obtained from Amazon. They offered the item below retail price, typically 40% below, and GLUMAC paid them in cash. During their initial meeting at which they delivered the item to GLUMAC, GLUMAC asked if the FINANs could obtain more of that particular consumer electronics item, and they agreed that they could. Over the next several years, the FINANs met with GLUMAC in person on a regular basis, often multiple times per week, to deliver consumer electronics items they obtained from Amazon in exchange for money. The FINANs told agents that GLUMAC was aware the items were obtained from Amazon and that he was generally aware the FINANs did not obtain the items lawfully. For example, they stated that GLUMAC has previously told them that he is aware of

other individuals who are "doing the same thing" as the FINANs and that he (GLUMAC) obtains and re-sells property from those individuals too.

24. **The FINANs Often Met GLUMAC in Person.** The FINANs told the agents that, typically, they met GLUMAC in person at a third-party location, such as a parking lot, to deliver the stolen items, which he loaded into plastic bins or "totes" in his vehicle. The FINANs also stated that, for a period of time when they were out of town, they arranged for the items they obtained from Amazon to be delivered directly to GLUMAC's residence. Amazon data confirmed that between approximately September and December 2015, 38 items ordered as part of the fraudulent scheme were delivered to 2875 Beethoven Avenue, Indianapolis, Indiana 46239, which Marion County, Indiana property records show was owned by GLUMAC.

25. LEAH FINAN stated that, during the last few months prior to their arrest, they typically met GLUMAC in the parking lot of a Forum Credit Union located at 7855 Brookview Road, Indianapolis, Indiana. GPS data from a tracking device placed on one of the vehicles the FINANs used in late 2016 confirmed that the vehicle was driven to the Forum Credit Union at 7855 Brookview Road on at least four separate occasions during November and December 2016.

26. **Phone Records Showed Frequent Contact between GLUMAC and the FINANs.** Phone records for a cellular phone used by the FINANs confirmed the frequency of their contact with GLUMAC during a period in which agents knew the FINANs were placing and receiving fraudulent orders on Amazon. Records obtained in or around November 2016 showed approximately 600 text messages within the prior 2 ½ months between the FINANs' phone number and a number known to be associated with GLUMAC.

27. **Bank Records Show GLUMAC Paid the FINANs Over $500,000 for the Stolen Items.** The FINANs stated that GLUMAC paid them for the items in multiple ways. During the

first month of their interactions, GLUMAC paid them in cash. However, according to ERIN FINAN, the volume of the transactions began getting too high for GLUMAC to continue paying in cash.

28. GLUMAC wanted to pay them by wire transfer. LEAH FINAN stated that GLUMAC told them that he wanted to wire the money to a business instead of to an individual. In response, and for the purpose of receiving the wired funds, the FINANs created companies "Tech Pro," "Tech Pro Services," and "Trade Plus" and opened bank accounts in the names of those companies. Over the next several years, GLUMAC made numerous wire transfers from a bank account held in the name of "So Trade," which they believed to be a company GLUMAC owned, to the FINANs' companies' accounts. Also, on some occasions, GLUMAC handed them a check from "So Trade." ERIN FINAN said he would then typically cash the check.

29. Bank records confirmed that between at least October 2014 and June 2016, funds were wired from the So Trade account at Regions Bank on an almost weekly basis to bank accounts of the FINANs or their companies "Tech Pro," "Tech Pro Services," and "Trade Plus" at PNC Bank, Regions Bank, Horizon Bank, and Bank of America. Checks payable to Erin Finan and Leah Finan were also written from the So Trade account. During that time period, the records show over 200 wire transfers and approximately 20 checks from So Trade to the FINANs and their companies totaling over $500,000.

30. For example, on or about July 16, 2015 GLUMAC initiated a wire transfer in the amount of $8,960 from the Regions Bank account of So Trade. The recipient of this wire transfer was the Regions Bank account of Tech Pro Services, an account held and controlled by Erin and Leah FINAN.

31. **GLUMAC Sold the Items to New York Entity.** Bank records show that GLUMAC received the money to pay the FINANs from an entity in New York called Mojoacc, Inc., which is a surveillance equipment store, located in New York, NY that also sells consumer electronics online using the Amazon and eBay marketplaces. Since at least the start of 2015, Mojoacc has wired funds to So Trade more than one hundred times and totaling nearly $900,000. Bank records show that, often shortly after receipt of the wire transfers from Mojoacc, So Trade wired funds to accounts controlled by the FINANs. Approximately sixty percent of the funds GLUMAC receives into So Trade's account from Mojoacc were ultimately paid to the FINANs.

***Controlled Deliveries of Items to GLUMAC and Statements from GLUMAC***

32. Immediately following their arrest on February 2, 2017, LEAH FINAN confirmed that she and ERIN FINAN were still in regular contact with GLUMAC and were selling stolen items to him. She stated that the most recent meetings with GLUMAC took place on January 25 and 27, 2017. She observed the plastic totes in GLUMAC's vehicle on these occasions, which during these meetings were filled with GoPro HERO5 cameras. (Amazon data confirm that the FINANs recently obtained numerous GoPro HERO5 cameras as part of their fraudulent scheme.)

33. In the days following their arrest, GLUMAC continued to communicate with the FINANs regarding receiving stolen items. Between approximately February 10–15, 2017, LEAH FINAN received text messages from GLUMAC concerning his interest in obtaining more consumer electronics items from them. LEAH FINAN proposed meeting GLUMAC on Friday, February 17, 2017. GLUMAC responded, "Ok cool. Let me know Friday then if u get any in," referring to consumer electronics items.

34. On February 17, 2017, February 24, 2017, and March 29, 2017, the FINANs met GLUMAC in person in a bank parking lot and Speedway gas station parking lot in Indianapolis,

Indiana to sell additional items to him. (The items were GoPro HERO5 cameras, which law enforcement provided for the purpose of these sales.) On all three occasions, agents observed GLUMAC meet the FINANs, purchase the GoPro HERO5 cameras, load the items into his vehicle, and drive away.

35. On and after these meetings, GLUMAC made statements to the FINANs, both in person and in text messages, that indicated both that GLUMAC was aware that the FINANs were obtaining the items by fraud and that he wanted more items from the FINANs. For example, during the February 17 interaction, the FINANs told GLUMAC that they were having a more difficult time obtaining items. GLUMAC then stated that he was aware of issues with EBay shutting down accounts but not Amazon. GLUMAC then advised the FINANs to use different computers for each account that is used and to vary the IP addresses that are used for different accounts. He further recommended going to retail locations such as McDonalds to use their wireless internet and IP address. In doing so, he informed the FINANs that if "they," referring to Amazon, observed in their data 20 different accounts coming from the same house or the same IP address, it could get flagged as being suspicious. During these discussions, GLUMAC often referenced his "guy" as the source of his knowledge on how to keep accounts from being flagged or shut down.

36. Later that day, GLUMAC sent several text messages to LEAH FINAN with additional ideas for masking their IP address. First, he suggested using a website called "24vc.com" to mask their IP address. He stated, "That's what my guy uses. Think he pays like $10/month for IP address from a different state and he's got multiple ones."

37. He sent additional text messages advising them to try to connect to the internet at multiple different locations to try to vary the Internet Protocol (IP) address that would be used to

connect to Amazon's website: "[T]ry using wifi location from restaurants or places that offer free wifi. And make sure you don't use same ip on multiple accounts because that will link them together. So if you use a McDonald's on Brookville [road] remember which account you used on it." He also advised to "clear cookies and catche [sic] on phone before using the other account too," which referred to deleting files on the phone or computer that can be used to track users and devices.

38. During the February 24 interaction, GLUMAC mentioned the 24vc.com website again and advised that it can mask a user's IP address and keep it from being linked to the user. He explained that it is a computer program that allows users to set up a "profile' to make it look like the user is going through "that state's internet." He further explained that he knows someone that has about ten different profiles set up for different locations so that the person's IP address cannot be tracked, thus concealing the person's physical location. He then reiterated that multiple accounts using the same IP address may raise a red flag for Amazon.

39. During the March 29 interaction GLUMAC asked the FINANs if "they" (Amazon) unfroze their (the FINANs') accounts. GLUMAC also mentioned that he was receiving 10 to 15 tablets on a weekly basis from another currently unidentified individual.

**CONCLUSION**

40. Based on the facts set forth in this affidavit, there is probable cause to believe that DANIJEL GLUMAC committed violations of 18 U.S.C. § 1349 (conspiracy to commit mail fraud), 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1956(h) (conspiracy to commit money laundering), and 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i) (money laundering), as described herein.

41. Therefore, I respectfully request that the Court issue the Criminal Complaint charging DANIJEL GLUMAC accordingly, and issue a Warrant for his arrest.

**REQUEST TO SEAL**

42. Because the investigation is ongoing, and the investigation is not known to some of the targets of the investigation, including DANIJEL GLUMAC, I respectfully request the Court to seal the file, including the Complaint (with accompanying Affidavit) and Arrest Warrant, pending further Order of the Court.

FURTHER, YOUR AFFIANT SAYETH NOT.

Laura A. Carter, Postal Inspector
United States Postal Inspection Service

Subscribed and sworn to before me this 1st day of May, 2017.

HON. MARK J. DINSMORE
United States Magistrate Judge
Southern District of Indiana